**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                        Case No. 2:25-cr-20341-MSN

ORRECO LYONS,

      Defendant.

**ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND
RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

Defendant has moved to suppress all evidence found during a search of his vehicle and his person on December 2, 2024 (ECF No. 22, "Motion"). The Court referred Defendant's Motion to the Chief Magistrate Judge, who held an evidentiary hearing and issued a Report and Recommendation (ECF No. 32, "Report"). The Report recommended that Defendant's Motion be denied. Defendant then filed objections (ECF No. 33) to which the government has responded (ECF No. 34).

**<u>STANDARD OF REVIEW</u>**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the

recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in forfeiture of those objections.  Fed. R. Crim. P. 59(b)(2).[1]

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.")  The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made.  *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985).

---

[1] Although the text of the Rule 59(b)(2) provides that a failure to object "waives a party's right to review," the Sixth Circuit has clarified that a failure to object is not a waiver, but a forfeiture. *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) ("We clarify that forfeiture, rather than waiver, is the relevant term here.") (explaining, "*Thomas v. Arn* held that 'the failure to file objections to the magistrate's report *waives* the right to appeal the district court's judgment,'" but *Arn* preceded the Supreme Court's clarification in *United States v. Olano*, 507 U.S. 725, 733 (1993).)  The difference matters because forfeited issues may nevertheless be considered on appeal in certain circumstances. *Id.* (citing *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018)).

**DISCUSSION**

A.    **Findings of Fact**

Neither party has objected to the Report's findings of fact.  The Court therefore **ADOPTS** the Report's proposed findings of fact in their entirety.

B.    **Conclusions of Law**

Defendant objects to the Chief Magistrate Judge's conclusions that: (1) Defendant's driveway was not within the protected curtilage of his home; (2) Defendant was not under arrest, but instead subject to an investigative detention; and (3) there were specific and articulable facts justifying Defendant's detention.  (ECF No. 33 at PageID 90–96.)

1.    Was Defendant's driveway was within the protected curtilage of his home?

Defendant argues that the Report's conclusion that his driveway was not within the protected curtilage of his home was erroneous.  (ECF No. 33 at PageID 90–93.)  Specifically, he takes issue with the Chief Magistrate Judge's application of the four-factor test from *United States v. Dunn*, 480 U.S. 294, 301 (1987), claiming that the test is unworkable (at least in this case) in light of *Collins v. Virginia*, 584 U.S. 586 (2018), and *Florida v. Jardines*, 569 U.S. 1 (2013).  (ECF No. 33 at PageID 90–93.)  According to the Defendant, the protections afforded by the Fourth Amendment cannot be made contingent upon the presence of a garage, a fence, or some other barrier.  (*Id.* at PageID 92.)  Applying *Dunn*, he argues, would create an "impossible standard for a typical ranch-style home in Shelby County, Tennessee."  (*Id.*)

This is not so.  As an initial matter, there can be no debate that "the home is first among equals," and the Fourth Amendment protects curtilage as though it were "part of the home itself." *Collins*, 584 U.S. at 592 (citations omitted).  And it is undisputed that, under certain circumstances, a driveway may constitute "an area adjacent to the home [] to which the activity of home life

3

extends, and so [be] properly considered curtilage." *Id.* at 593–94. But the difficulty in this case is that Defendant would have the Court end its analysis right here, concluding that because driveways are protected curtilage, and Mr. Lyons was in a vehicle parked on his driveway, he was within the protected curtilage of his home. And because *Collins* held that "[n]othing . . . suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant," *id.* at 595, the evidence in this case should be suppressed.

Defendant misreads both *Collins* and *Jardines*, extending their holdings beyond their proper contexts. First, *Collins* stands for the proposition that *when* a driveway constitutes curtilage, the automobile exception does not authorize an "officer without a warrant to enter a home or its curtilage in order to search a vehicle therein." *Id.* at 601. *Collins* does not prohibit law enforcement from entering driveways that are *not* properly considered curtilage; even less does it indicate that driveways are to be considered curtilage by default.[2] Second, nothing in *Collins* suggests that the factors laid out in *Dunn* have been abrogated or rendered obsolete. Indeed, the Sixth Circuit has continued to apply *Dunn* to cases just like this one. *See, e.g.*, *United States v. Coleman*, 923 F.3d 450 (6th Cir. 2019). Finally, Defendant's appeal to *Jardines* suffers from a similar overextension. In *Jardines*, which involved the use of a police canine to search for the scent of drugs on a front porch and at the base of a front door, the Supreme Court addressed the scope of an implicit license to be within a home's curtilage. 569 U.S. at 6 (determining that officers "in the curtilage of the house" engaged in "conduct not explicitly or implicitly permitted

---

[2] This is evidenced, in part, by the fact that the Supreme Court went to the trouble of examining photographs in the record to determine the extent to which the driveway in that case was "enclosed." *Collins*, 584 U.S. at 593.

by the homeowner").  Like *Collins*, *Jardines* does not address police activity in areas *not* properly considered curtilage.

As the Chief Magistrate Judge correctly determined, courts use four factors to determine whether an area is within a home's curtilage: "(1) proximity to the home; (2) whether the area is within an enclosure around the home; (3) uses of the area; and (4) steps taken to protect the area from observation by passersby."  *Coleman*, 923 F.3d at 455 (citing *Dunn*, 480 U.S. at 301).  And as the Chief Magistrate Judge also discussed, there are at least two Sixth Circuit decisions that point to the right answer in this case:  *United States v. Estes*, 343 F. App'x 97 (6th Cir. 2009), and *United States v. Galaviz*, 645 F.3d 347 (6th Cir. 2011).[3]  In *Estes*, the court determined that because the driveway in question was not enclosed, had not been protected from observation, and was used as a "point of entry into the residence," it was not curtilage.  *Estes*, 343 F. App'x at 101.  Similarly, *Galaviz* involved a driveway approximately two car-lengths long, adjacent to the residence, without enclosure or visual obstruction, "abutting the public sidewalk."  *Galaviz*, 645 F.3d at 356. The Sixth Circuit concluded that, "[t]herefore, police officers needed no warrant to enter onto the portion of the driveway on which Galaviz's car was parked."  *Id.*

Mr. Lyons is similarly situated to the *Galaviz* and *Estes* defendants.  His driveway provided the pathway to the entrance of the residence, was neither enclosed nor protected from observation, ran up to the sidewalk, and was approximately two car-lengths long.  In short, applying the *Dunn* factors leads the Court to the conclusion that Mr. Lyons's driveway was not protected curtilage.

---

[3] And lest there be any suggestion that *Estes* and *Galaviz* are somehow no longer relevant after the Supreme Court's decision in *Collins*, the Sixth Circuit has explicitly discussed their continuing importance: "Though prior to the *Collins* ruling, the Sixth Circuit cases of [*Galaviz*] and [*Estes*] survive Collins and are factually more on point. Both cases involved driveways with similar characteristics to the one here: adjacent to a home, not enclosed, abutting a sidewalk or alley, with no steps taken to obstruct the view of passersby." *Coleman*, 923 F.3d at 456.

Defendant's objection to the Report's conclusion as to whether the driveway constituted curtilage is **OVERRULED**.[4]

> 2.       Was Defendant subject to a de facto arrest?

Defendant further objects to the Report's conclusion that "Lyons was not under arrest when he was handcuffed and patted down for weapons." (ECF No. 32 at PageID 81.)  Instead, Defendant maintains that he was subject to an arrest requiring probable cause justification even earlier, "when the officer pulled his weapon as [Defendant] was sitting in his vehicle." (ECF No. 33 at PageID 92.)

While "the scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop," *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 873 (6th Cir. 2012) (quoting *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994)), "[t]here is no 'litmus test' for determining when an investigatory stop becomes an arrest that requires probable cause." *United States v. Williams*, No. 23-1839, 2024 WL 4543426 at *2 (6th Cir. Oct. 22, 2024) (quoting *Dorsey v. Barber*, 517 F.3d 389, 399 (2008)).  Instead, the issue requires a fact-specific inquiry.  Courts are to "consider factors such as the length of the detention, the manner in which it is conducted, and the degree of force used." *Id.* (citations omitted).  Furthermore, "[w]here the display or use of arms is viewed as 'reasonably necessary for the protection of the officers,' [] courts have generally upheld investigative stops made at gunpoint," and "if the surrounding circumstances give rise to a justifiable fear for personal safety,

---

[4] The Court has considered Defendant's argument that the *Dunn* factors "strip[] a middle-class homeowner of their Fourth Amendment rights simply because of the way their homes are designed." (ECF No. 33 at PageID 92–93.)  But this fails to account for other ways homeowners might protect their driveways: installing "Keep Out" or "Private Property" signs, providing paths across the lawn, planting trees or shrubs, just for a few examples.  *Dunn* is not entirely dependent upon structural factors outside a homeowner's control, as Defendant would have the Court believe.

a seizure effectuated with weapons drawn may properly be considered an investigative stop." *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986) (citations omitted); *see also United States v. Bradley*, No. 5:18-CR-26-TBR, 2019 WL 4017246 at *7 (W.D. Ky. Aug. 26, 2019) ("The Sixth Circuit permits the use of force, such as handcuffs and guns, to effect a stop when such a show of force is reasonable under the circumstances of the stop.").

Preliminarily, it is important to recall that Deputy Johnson, the investigating officer, arrived at Defendant's home in response to a noise complaint. (ECF No. 32 at PageID 74.) And as the Court has already held, Deputy Johnson permissibly approached the driver's side of Defendant's car because the driveway was not protected curtilage. Defendant's vehicle was properly identified as the source of "loud music," which anyone could reasonably conclude was also the cause of the noise complaint. (*Id.*) In short, everything up to the point of Deputy Johnson's first interaction with the Defendant was aboveboard.

Having called out to the Defendant more than once, Deputy Johnson continued to approach the driver's side window and observed the Defendant "facing forward" and "sing[ing] and sway[ing] to the music." (*Id.* at PageID 75.) As Deputy Johnson approached, the Defendant was waving a gun around—and in Deputy Johnson's direction (though the Chief Magistrate Judge properly concluded that "he did not point the barrel directly at" the officer). (*Id.*) It was in this context that Deputy Johnson raised his voice and held the Defendant at gunpoint, eventually placing him in handcuffs after an extended (noncompliant) back-and-forth. (*Id.* at PageID 75–76.)

Considering these events in light of standard laid out above, the Court concludes that Defendant was *not* subject to arrest, but instead subject to an investigative detention. First, the indiscriminate waving of a firearm coupled with Defendant's apparent ignorance of the officer's presence is certainly enough to "give rise to a justifiable fear for personal safety." *Hardnett*, 804

7

F.2d at 357.  Add that the firearm was waved in Deputy Johnson's direction, and the threat to his safety becomes even more clear.

Along those lines, the amount of force used and the manner in which the detention was conducted were reasonable.  Deputy Johnson employed no more force than that required to maintain his safety and that of the Defendant.  He went on to clarify that "Lyons . . . was not under arrest, but was only being detained for officer safety."  (ECF No. 32 at PageID 77.)  Finally, the length of the detention was brief, lasting only until deputies had evaluated the scene, spotted a controlled substance, and discovered that the Defendant was a convicted felon and thereby prohibited from possessing firearms (of which he had two).

Having thus considered the relevant factors, the Court concludes that the Defendant was not under arrest until the firearms were found during the investigation.  Accordingly, Defendant's objection to the Report's conclusion that he was not under arrest at any point prior to discovery of the weapons is **OVERRULED**.

3.      Did Officer Johnson have reasonable suspicion justifying investigative detention of the Defendant?

Defendant's third and final objection addresses the Report's conclusion that Deputy Johnson was aware of "specific and articulable facts" supporting a reasonable suspicion that "he was a danger to himself or others."  (ECF No. 33 at PageID 95–96; ECF No. 32 at PageID 85.)  Specifically, he contends that *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128 (6th Cir. 2015), provides a rule rendering Deputy Johnson's detention of the Defendant unconstitutional.

As a general matter, a brief investigative detention may be warranted "if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur."  *United States v. Davis*, 514 F.3d 596, 607–08 (6th Cir. 2008) (quoting *United States v.*

*Davis*, 430 F.3d 345, 354 (6th Cir. 2005)).  First, courts look at the rationale for the detention, "which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion."  *Id.* at 608 (citation omitted).  Second, they ask "whether the degree of intrusion [] was reasonably related in scope to the situation at hand."  *Id.* (citation omitted).

Courts have also permitted investigative detention "[w]hen the officer has a reasonable belief that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others."  *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (citation omitted).  And "it would . . . be unreasonable to deny the officer the measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."  *Id.* (citation omitted); *see also Deffert v. Moe*, 111 F. Supp. 3d 797, 808–10 (W.D. Mich. 2015) (holding that officers "had reasonable suspicion to stop and detain Plaintiff long enough to make sure he was not a threat to himself or others"); *Baker v. Smiscik*, 49 F. Supp. 3d 489, 497–98 (E.D. Mich. 2014) (emphasizing that "police are properly given sufficient freedom of action to investigate circumstances that reasonably suggest an immediate risk to officer or public safety" and that "[t]he Constitution does not limit . . . officers' rights to protect themselves . . . when their fear is reasonably based on objective facts") (citation omitted).

Ultimately, the Court concludes, Deputy Johnson's detention of the Defendant was reasonable and constitutionally permissible under both frameworks.  Taking the issues in reverse order, it is abundantly clear from the bodycam footage that the individual Deputy Johnson was investigating was armed and potentially dangerous.  Defendant, intentionally or not, repeatedly ignored the officer's announcements, waved a gun at the officer upon his approach, and was apparently oblivious to anything going on around him.  These "circumstances . . . reasonably

suggest an immediate risk to officer or public safety." *Smiscik*, 49 F. Supp. 3d at 498.  Defendant's contention that there was "no threat of any nature," ECF No. 33 at PageID 96, is, frankly, farcical. While it is true that the Defendant apparently did not make an *affirmative* threat (assuming he really was ignorant of Deputy Johnson's presence), to conclude that absentmindedly waving a firearm around as an officer approaches is non-threatening would be absurd.  The Court hopes it is self-evident that the practical consequences of forcing law enforcement officers to permit such behavior without taking steps to defend and protect themselves could be disastrous.

Alternatively, however, the Court also concludes that Deputy Johnson was aware of "specific and articulable facts which gave rise to a reasonable suspicion," *Davis*, 514 F.3d at 608, that the Defendant "ha[d] committed, or [was] about to commit, a crime."  *Northrup*, 785 F.3d at 1131.  Specifically, the Defendant's failure to acknowledge Deputy Johnson (again, intentionally or not), the loud blaring music, waving a firearm around while dancing, and moving the firearm in Deputy Johnson's direction taken together all give rise to a reasonable suspicion that "criminal activity was afoot."[5]  *United States v. Sokolow*, 490 U.S. 1, 9 (1989) (citation omitted).

As mentioned above, however, Defendant argues, *contra* the Court's analysis, that this case is closer to *Northrup v. City of Toledo Police Dep't*.  In *Northrup*, the Ohio plaintiff had gone for a walk with a handgun holstered on his hip, prompting a passerby to call 911 in alarm.  785 F.3d at 1130.  An arriving officer ordered the plaintiff to turn around and put his hands up, walked up and retrieved the holstered firearm when the plaintiff did not comply, and eventually handcuffed the plaintiff on suspicion of "inducing panic" in violation of Ohio law.  *Id.*  Despite Ohio's open-carry law, the officer claimed a "reasonable suspicion" based on the visible firearm and the 911

---

[5] At the risk of stating the obvious, the criminal activity potentially afoot could have included threatening a law enforcement officer.

call.  *Id.* at 1131.  The Sixth Circuit ultimately held that this was insufficient, because no facts supported a suspicion of inducing panic and Ohio law otherwise authorized exactly what the plaintiff was doing.  *Id.* at 1132–33.

The Defendant here claims to be in the same position.  In particular, he argues that because Tennessee also permits the open carry of firearms and there was "no threat of any nature," "the mere sight of a pistol does not provide reasonable suspicion."  (ECF No. 33 at PageID 95–96.) And without reasonable suspicion, Defendant says, his detention was constitutionally impermissible.  (*Id.* at PageID 96.)

But Mr. Lyons's situation is distinguishable from the plaintiff in *Northrup*, most obviously because he was not observed simply in passive possession of a firearm, which, to be sure, is legal in Tennessee.  Rather, he was sitting in his vehicle singing and dancing to extremely loud music with the windows open, ignoring an approaching officer, waving a gun around, and moving it in the officer's direction when he got to the driver's side window.  However the Defendant would like to characterize that behavior, it is not mere possession on private property.  As the Chief Magistrate Judge succinctly and correctly summarized, "Lyons did more[—]he held the gun and flashed it in the direction of Deputy Johnson."  (ECF No. 32 at PageID 85.)  And as the Court has indicated above, those actions combined with all of the other behavior and context provide ample "specific and articulable facts" upon which Deputy Johnson could reasonably suspect that the Defendant was a danger to himself or others, or that criminal activity was otherwise afoot.

Accordingly, Defendant's objection to the Report's conclusion that Deputy Johnson possessed the requisite "reasonable suspicion" is **OVERRULED**.

## CONCLUSION

After a *de novo* review, the Court determines that: (1) Defendant's driveway was not protected curtilage; (2) Defendant was not subject to *de facto* arrest; and (3) Deputy Johnson had reasonable suspicion justifying his detention of the Defendant.  In sum, none of Defendant's objections (ECF No. 33) are meritorious, and they are **OVERRULED**.  The Chief Magistrate Judge's Report and Recommendation (ECF No. 32) is **ADOPTED** in its entirety.  Defendant's Motion to Suppress (ECF No. 22) is **DENIED**.

**IT IS SO ORDERED**, this 24th day of June, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE